## BURTON WALKER LUMBER CO. v. HOWARD et al.

No. 5642. Decided March 22, 1937. (66 P. [2d] 134.)

*Arthur Woolley* and *R. H. Baumunk*, both of Ogden, for appellant.

*Wade M. Johnson*, of Ogden, for respondents.

WOLFE, Justice.

In March of 1930, Harold S. Campbell was the legal owner for the benefit of the Thrift Association of the Ogden State Bank of the following real estate, to wit: Lots 19 and 20, block 1, of Dunn's addition to Ogden City, Utah. In that month he entered into a contract with Wm. Howard to sell the lots for $250. The records show that between this time and April 1, 1932, the principal was reduced to $131.05 and on April 29, 1932, there was due $131.85 principal and interest.

After Howard obtained an interest in the property, he caused to be built thereon a house with material furnished by the plaintiff and Sangberg, a defendant and cross-complainant, and the labor of Penrod and the Graviets, all defendants and cross-complainants, and the labor of others not parties. The court found the land, with the improvements, to be in excess of $2,500 in value. One witness stated that $3,100 to $3,400 had been put in the house. The house was built between July 31st and December, 1931.

On April 28, 1932, after the lots had been adorned by this residence constructed, as it seems, by materialmen and laborers, Campbell conveyed by warranty deed to Wm. P. Foster the real estate, describing it as above mentioned, but not mentioning any improvements. The price paid by Foster was $131.85, the exact amount owed by Howard, although the named consideration was $250. In August, 1931, Wm. P. Foster and his wife conveyed by warranty deed to Caroline Bond the real estate described as above.

Both Campbell's and Foster's deeds were made subject to general taxes, and Foster's also subject to special taxes. The amount paid by Mrs. Bond was $125, although the deed recites $250. Both these transactions from Campbell to Foster and Foster to Bond were negotiated and carried through by Hyrum A. Belnap. Foster was his father-in-law. Belnap had been attorney for Howard. On October 14, 1932, after Mrs. Bond obtained title to the property, Belnap prepared a declaration of homestead on this property for Howard, but he did not file it. Belnap testified he endeavored to obtain money from various sources to pay off Campbell and clear the property of the liens placed upon it by plaintiff and the cross-complainants, but failed. He finally went to his father-in-law who agreed to buy it for $131.05. Mrs. Bond was Howard's former wife. Howard owed her alimony. Belnap says that she said she would buy it from Foster because she could get her alimony in that way. Her children by Howard lived with Howard.

Blaine Richards rented the property from December, 1931, to June, 1932. He first paid rent to Howard. Toward the end of his stay he paid to Belnap who receipted for Foster. He received notice of Foster's ownership. From his evidence, it is not clear whether he paid rent to Howard after April 28, 1932, when Campbell conveyed to Foster. But within thirty days of the time he moved out, he consulted Howard about a reduction in rent. Howard "implied he was going to move in himself." After he moved out, Howard moved in. Belnap testified he had collected the rent from Richards in May and June and he collected in July the August rent from Howard after he went in, but Howard paid no rent after that. Mrs. Bond, after she acquired the property, permitted Howard and her children by Howard to live in the house. The alimony due her was $25 a month. The Richards boy first paid $25 per month rent. So the fact is that Howard lived without paying rent in a house which Mrs. Bond claimed. This house had brought $25 a month rental. At the same time he was not paying Mrs.

Bond her $25 a month alimony, although he was supporting the remaining unmarried daughter who was then under age.

The trial court found that the said defendant, Wm. Howard, under and pursuant to the terms of his contract, caused the said Harold S. Campbell and wife to deed and convey the property to Wm. P. Foster. The court also found that "all of said deeds of conveyance were made and the rights acquired in said property were subject to the lien of the plaintiff and to the liens of the cross-complainants, H. O. Sangberg, George Penrod, and A. J. Graviet and Burrell R. Graviet, doing business as A. J. Graviet & Son."

At the time the plaintiff and other labor-furnishing defendants furnished labor and materials, they could obtain no lien on anything except Howard's interest. That interest they enhanced in value until it became worth over $3,000 as compared to Campbell's interest which decreased to $131.85 at the time he conveyed to Foster. There is ample evidence to support a finding that Campbell intended to convey and Foster only intended to receive Campbell's interest and that Foster intended to convey and Mrs. Bond to receive only that interest. What was that interest? It is claimed by appellant that because of a default on the part of Howard, it is the entire fee, without interest remaining in Howard. The evidence speaks differently. The money paid for the conveyances from Campbell to Foster and Foster to Bond, together with the other attendant circumstances of Belnap, Howard's attorney, endeavoring to raise money for Howard and then finally obtaining his father-in-law to take it over for exactly what was due Campbell, and Mrs. Bond's then paying what remained due to Foster, thereafter leaving Howard occupying the property without rent, sustain a strong inference that the conveyances were in recognition of Howard's outstanding interest. The fact that a purchaser may default in a payment does not necessarily mean his interest reverts to the vendor. The vendor may still recognize his interest. The records show some irregular payments. From these it appears that defaults were not en-

forced. Oddly enough, the contract between Howard and Campbell was not introduced in evidence. We, therefore, cannot say what its provisions were regarding forfeiture on default. On October 1, 1930, there was $155 owing. The next sum is $5 paid March 1, 1932, and the payment on principal of $18.95 made on April 28, 1932. It is true that Belnap states he collected one rent payment for Foster, but the only receipt in evidence is for $7.50. This is just $1.07 short of the figure necessary to make Foster whole when he received $125 for principal invested and interest at the rate of 8 per cent., if he paid $131.85. And if the testimony of Belnap is correct that Foster paid only $131.05 instead of $131.85, the $125 is only 27 cents short of making him whole on principal invested and interest to the date of conveyance to Mrs. Bond.

If Howard's interest is still outstanding in a procedure to foreclose liens, it may be subjected to these liens. The interest of Campbell and his successors, Foster and Bond, could not be subjected to the liens. But in the foreclosure proceeding, since Mrs. Bond was a party, the decree should have saved out her interest as being first payable out of the proceeds of the sale. The principal and interest owing to her has first call before the liens. Caroline Bond answered the plaintiff and all cross-complainants to the effect that she received the property by deed from Foster and denied that her claim was inferior to the rights and lien of plaintiff and cross-complaints on said property. The prayer of plaintiff and cross-complainants was that their claims be adjudged a lien upon the land and premises and that the defendants be required to set up their interest in the property and that the premises be sold, etc. Certainly, the pleadings and prayer were sufficient to permit the court to adjudicate as to everyone's interest. Counsel for plaintiff is incorrect in contending that Caroline Bond did not set up her interest. She would not be precluded because she did not admit an interest in Howard and set up the amount of her equity. If she claims the whole property with improve-

ments free of liens, the court may determine that she owns a lesser interest. The finding of the court to the effect that Howard had an outstanding interest is correct, but its finding that the conveyances to Foster and to Bond were made subject to the liens is wrong.

Appellant cites the case of *Belnap* v. *Condon*, 34 Utah 213, 97 P. 111, 23 L. R. A. (N. S.) 601, as authority for the proposition that the interest of the vendor cannot be subjected to mechanic's liens unless the vendor consents either through ratification or by giving the vendee implied or express authority to bind him. There is no question about this principle. There is no evidence here that Campbell consented, ratified, or authorized the furnishing of the materials and labor to build the home. But the real question is not one of subjecting the vendor's interest, but of determining what the vendor's interest was.

The judgment of the lower court is affirmed as to the judgments against Wm. Howard, the defendant, and as to the equality of right of the various liens and as to the proportions each shall receive of the proceeds, but Caroline Bond must be paid the amount she has in the property before any of the other liens, and the net after she is paid shall be distributed according to the proportions laid down in the decree. The case is therefore reversed with instructions to enter a decree in accordance with this opinion.

We think that much of the printed abstract was unnecessary to any elucidation of the question assigned and argued in plaintiff's brief. There was no question raised as to the validity or amount of the mechanics' and materialmen's claims, nor with the steps necessary to perfect a lien. We do not see why it was necessary to print each notice of lien and that part of all the cross-complaints setting up the nature and amount of claims, since they were not in question. The appellant is allowed costs, but only as to sixty pages of the abstract.

FOLLAND, C. J., and HANSON, MOFFAT, and LARSON, JJ., concur.