**2015 UT App 166**

## THE UTAH COURT OF APPEALS

REEVE & ASSOCIATES, INC.,
Plaintiff, Appellee, and Cross-appellant,

*v.*

KYE TANNER; *RALPH H. HANSEN*; *HELEN S. HANSEN*; AND *NMH ENTERPRISES, LTD*,
Defendants, *Appellants, and Cross-appellees.*

Opinion
No. 20130530-CA
Filed July 2, 2015

Second District Court, Ogden Department
The Honorable W. Brent West
No. 090904695

David B. Stevenson and Elizabeth A. Knudsen,
Attorneys for Appellants and Cross-appellees

Richard H. Reeve, Attorney for Appellee and
Cross-appellant

JUDGE JOHN A. PEARCE authored this Opinion, in which JUDGES
GREGORY K. ORME and KATE A. TOOMEY concurred.

PEARCE, Judge:

¶1     The owners of real property contracted to sell their land to a developer with a plan to create a residential subdivision. The developer retained a third-party contractor to undertake the tasks necessary for the project to receive county approval. While the contractor was completing its work, the developer's financiers got cold feet. The developer then sought a reduction in the price of the land to appease them. During this time, the developer failed to pay the contractor, but the contractor continued working on the project, in apparent hope that the landowners and developer would reach an agreement. The financiers eventually backed out, the land sale fell through, and

the project ground to a halt. The contractor then filed two mechanics' liens on the real property, seeking payment from the landowners for the completed work. After a bench trial, the district court ruled (1) that the liens were invalid because the contractor had worked only for the developer, who was not an agent of the landowners, and (2) that the contractor's unjust-enrichment claim failed because the contractor had not shown the value of the benefit conferred. The district court also denied the landowners' claim for attorney fees after determining that, while the liens were invalid, they were neither brought in bad faith nor abusive.

¶2     Despite largely prevailing at trial, the landowners appeal. They contend that they defeated the lien and were therefore statutorily entitled to an award of attorney fees. They also contend that the unjust-enrichment claim should have failed on more grounds than those the district court found. The contractor cross-appeals, arguing that the liens were valid because the landowners consented to or authorized the work the contractor performed. We reverse in part and affirm in part and remand the case to the district court to calculate and award attorney fees.

BACKGROUND

¶3     Helen and Ralph Hansen (Landowners) own parcels of land in Weber County via a revocable trust.[1] In 2006, a real estate developer (Developer) approached Landowners with a proposal to buy the land and turn it into a residential subdivision. In 2007, Landowners and Developer entered into a real estate purchase contract (the REPC). As part of that deal, Landowners would keep three lots in the subdivision for themselves. Shortly thereafter, Developer sought bids from contractors to test the

---

1. The parties' briefs do not distinguish between the trust and the Hansens, nor does such a distinction appear relevant for the purposes of this appeal.

soil, plan the subdivision, and obtain the proper permitting from the county. After selecting a bid from Reeve & Associates, Inc. (Contractor) to perform this work, Developer gave Contractor a $4,000 retainer.

¶4      By September 2007, Contractor was working on the project. That month, Landowners met with Contractor to discuss the test holes that needed to be dug. Landowners and Contractor also discussed several of Landowners' requests for the lots they would keep. In October, Weber County approved the preliminary plans for the subdivision. Throughout the winter, Contractor continued the preparatory work and permitting processes.

¶5      The deadline for closing the transaction expired on March 10, 2008. In May 2008, Landowners and Developer agreed to extend the REPC closing deadline to June 13, 2008. This deadline also expired without the deal closing.

¶6      Throughout this time, Contractor continued working on the project and sent monthly invoices to Developer, all of which went unpaid. In February 2009, Contractor submitted plat revisions and construction plans to Weber County for final approval. By May 2009, after Developer failed to meet certain bond requirements, Contractor realized the project was dead. In June 2009, Weber County informed Landowners that the plat-approval recommendation had expired and that, if the project were to proceed, a new application process would have to begin essentially from scratch.

¶7      Contractor filed two mechanics' liens on the property, totaling $71,105.97 plus interest and fees.[2] Contractor filed a complaint, seeking to foreclose on those liens and asserting an unjust-enrichment claim. The complaint sought the same

---

2. It is unclear from the parties' briefing why Contractor filed two liens, rather than a single lien for the total amount.

amount, but at trial, Contractor stated that the correct amount owed was $59,891.88 plus interest and fees. Contractor attempted to explain this discrepancy by noting that it had not originally applied the $4,000 retainer to the amount owed. As the district court noted, "How application of the $4,000 retainer fee resulted in a reduction of approximately $11,000 is unclear."

¶8      The district court held a bench trial on the lien-foreclosure and unjust-enrichment claims. The court found that Developer had not acted as Landowners' agent in his dealings with Contractor and that, as a result, Contractor had performed work only for Developer. The court concluded that the mechanics' liens claim therefore failed. The court also denied Landowners' request for attorney fees. With respect to the unjust-enrichment claim, the court found that Contractor had conferred a benefit on Landowners and that Landowners had inequitably retained that benefit. However, because there was no reliable testimony of the amount of the benefit conferred, the court was "unable to award the damages requested." After the decision was issued, Landowners filed a motion asking the court to amend the judgment, seeking an award of attorney fees. The district court denied that motion.

## ISSUES

¶9      First, Landowners contend that the district court erred in denying their request for an award of attorney fees, because the relevant statute mandated such an award. Second, Landowners contend that the district court erred by finding that the filing of the mechanics' liens was not abusive.

¶10     Third, Landowners contend that the district court erred by finding that Contractor had conferred a benefit on them and that they inequitably retained it. Fourth, Landowners contend that the district court erred by failing to find that the mechanics' liens were untimely filed. Fifth, Landowners contend that the district court's "findings of fact on several material issues are

against the weight of the evidence, clearly erroneous, and must be corrected."

¶11    Contractor cross-appeals, contending that the district court erred in determining that the mechanics' liens statute required Developer to be Landowners' agent in order for Contractor to lien Landowners' property.

ANALYSIS

I. The Attorney Fee Statute

¶12    Landowners contend that the district court applied the wrong standard for determining whether they were entitled to an award of attorney fees. They assert that under the correct standard, an award was mandatory.

¶13    Utah Code section 38-1-18 (the Attorney Fee Statute) provided that, subject to two restrictions not pertinent here, "in any action brought to enforce any lien under [the mechanics' liens] chapter the successful party *shall* be entitled to recover a reasonable attorneys' fee." Utah Code Ann. § 38-1-18(1) (LexisNexis 2010) (emphasis added).[3] The district court denied Landowners' request for attorney fees, reasoning, "As there was not a valid mechanic's lien in this case, [Landowners] cannot now seek to apply [the Attorney Fee Statute]."

¶14    We review a district court's interpretation of a statute for correctness and its factual findings for clear error. *Town of Leeds v. Prisbrey*, 2008 UT 11, ¶ 5, 179 P.3d 757. When interpreting a statute, we look first to its plain language. *Salt Lake City v. Miles*, 2014 UT 47, ¶ 13, 342 P.3d 212. The plain language of the Attorney Fee Statute does not distinguish between successful

---

3. Utah Code section 38-1-18 has since been renumbered. *See* Utah Code Ann. § 38-1a-708 (LexisNexis 2014).

and unsuccessful lien-enforcement actions. The Utah Supreme Court has recognized that the Attorney Fee Statute cuts both ways, simultaneously enabling rightful lienors to recover without bearing the costs of litigation and "discouraging abuse of the lien process by creating a strong disincentive for a would-be litigant to wrongly inflict a mechanic's lien." *A.K. & R. Whipple Plumbing and Heating v. Guy*, 2004 UT 47, ¶ 24, 94 P.3d 270. Specifically, "a mechanic's lien plaintiff who is not successful must pay the defendant's attorney fees." *Id.* In short, the Attorney Fee Statute's use of the phrase "any action brought to enforce any lien" contemplates actions that are ultimately unsuccessful due to the invalidity of the mechanics' lien at issue. We therefore conclude that the district court erred in ruling that the absence of a valid mechanics' lien precluded an award of attorney fees under that statute.

¶15     Contractor responds by asserting that, in the district court, Landowners sought relief only in the form of statutory damages under Utah Code section 38-1-25 (the Abusive Lien Statute). *See* Utah Code Ann. § 38-1-25 (LexisNexis 2010) (current version at Utah Code Ann. § 38-1a-308 (LexisNexis 2014)). Contractor argues that "[Landowners] attempt on appeal to change their claim and focus on [the Attorney Fee Statute]—a statutory remedy that was only mentioned in passing at the trial." Contractor urges that Landowners "should not be allowed to argue for a remedy that was not at issue at trial." This is essentially a preservation claim. Under our preservation rule, issues that are not raised at trial in such a way as to give the district court an opportunity to address them are generally deemed waived on appeal. *Wohnoutka v. Kelley*, 2014 UT App 154, ¶ 3, 330 P.3d 762.

¶16     Here, however, Landowners raised the issue below, and the district court explicitly addressed the Attorney Fee Statute claim. The district court's order notes that, at trial, Landowners "argued for fees and costs under both Utah Code Annotated §§ 38-1-18 and 38-1-25," i.e., the Attorney Fee Statute and the Abusive Lien Statute. Moreover, the district court referred to the

Attorney Fee Statute in its ruling: "As there was not a valid mechanic's lien in this case, [Landowners] cannot now seek to apply *the statute for an award of attorneys' fees*." (Emphasis added.) Contractor urges us to read this as a reference to the Abusive Lien Statute. But the district court considered in a separate part of the ruling whether statutory damages could be awarded under the Abusive Lien Statute. It therefore appears that the quoted portion of the order constituted the district court's ruling on the Attorney Fee Statute claim. This is reinforced by the district court's subsequent order, clarifying that "the [Landowners'] basis for requesting relief [was] two sections of the Utah Code Annotated, namely sections 38-1-18 and 38-1-25." We therefore conclude that the issue of whether the Attorney Fee Statute applied was properly preserved for appeal.

¶17    Contractor next contends that the district court had the discretion to decline to award attorney fees, that the district court did so, and that the court acted within its discretion. In its order denying an award of attorney fees and statutory damages, the district court ruled that Landowners were not the successful party:

> [Landowners were] not the prevailing party. The Court determined [Landowners] prevailed on a legal technicality, but lost on the equity of the case. [Landowners] also lost on the issue of the abusive lien. Based on the facts and equities presented, the Court has determined that [Landowners] were not the prevailing party.

¶18    Contractor argues that this ruling was within the district court's discretion under the "flexible and reasoned approach" to attorney fee awards that the Utah Supreme Court has extended from contract to statutory-lien cases. *See Whipple Plumbing*, 2004 UT 47, ¶¶ 16–26 (citing *Mountain States Broadcasting Co. v. Neale*, 783 P.2d 551, 557 (Utah Ct. App. 1989)).

¶19   In *Whipple Plumbing*, a homeowner hired Aspen Construction to coordinate construction projects on several of his properties. *Id.* ¶ 2. Aspen hired Whipple to perform some of the tasks. *Id.* A dispute arose between Aspen and Whipple, and Aspen refused to pay Whipple. *Id.* Whipple then placed a mechanics' lien for $30,641.35 on one of the homeowner's properties. *Id.* ¶¶ 2–3. Aspen counterclaimed, alleging that it had been damaged by Whipple's deficient work to the tune of $25,000. *Id.* ¶ 3. The district court "calculat[ed] the consequences of the parties' respective wins and losses on their competing claims" and "awarded a net judgment to Aspen in the amount of $527." *Id.* Nevertheless, the district court determined that Aspen was not a "successful party" and thus not entitled to an award of attorney fees under the Attorney Fee Statute. *Id.* ¶ 4. The Utah Supreme Court affirmed, noting the magnitude of the competing claims and the fact that Whipple and Aspen each enjoyed only partial success on the mechanics' lien issue before concluding that "[t]he mere fact that, once the dust had settled, Aspen walked away with a net judgment of $527, does not convince us that Aspen was the 'successful party'" under the Attorney Fee Statute. *Id.* ¶ 30. However, while a district court has discretion to determine whether a party is "successful" under the "flexible and reasoned approach" formulated by this court in *Mountain States Broadcasting*, and adopted by the Utah Supreme Court in *Whipple Plumbing*, that discretion is not unfettered. "This approach requires not only consideration of the significance of the net judgment in the case, but also looking at the amounts actually sought and then balancing them proportionally with what was recovered." *Id.* ¶ 26. *Whipple Plumbing* balanced the amount a subcontractor recovered under a valid lien against the amount a contractor recovered pursuant to a counterclaim. *Id.* ¶ 3. The Utah Supreme Court held that receiving a net judgment for $527 after counterclaiming for $25,000 did not make Aspen a "successful party." *Id.* ¶ 30.

¶20   Here, in contrast, there is no indication that the district court weighed the amount sought by Contractor (either $71,105.97 or $59,891.88) against the amount actually recovered

(nothing). *See Stonecreek Landscaping, LLC v. Bell*, 2008 UT App 144U, para. 7 (explaining that, under the "flexible and reasoned approach" the district court must consider, at a minimum, the significance of the net judgment in the case and the amounts actually sought and recovered). Indeed, the case currently before us centers not on the amount recovered by each side but on the validity of the underlying liens. Landowners sought to have the two mechanics' liens encumbering their property declared invalid. They achieved that goal fully. Contractor, on the other hand sought to enforce the liens only to have the liens declared entirely invalid. We conclude that, at least with respect to the issue of the validity of the mechanics' liens, Landowners are the successful party under the "flexible and reasoned approach."

¶21    The Attorney Fee Statute's use of the word "shall" mandates an award of attorney fees to the prevailing party in any mechanics' lien action, including actions in which the lien is found invalid. *See* Utah Code Ann. § 38-1-18 (LexisNexis 2010). Landowners preserved a claim in the district court for such an award. To the extent that the district court determined that they were not the prevailing party, such a determination was an abuse of its discretion. Accordingly, we remand to the district court to calculate the reasonable amount of the attorney fees Landowners incurred in staving off the mechanics' lien claim and to award that amount to them, pursuant to the Attorney Fee Statute.

## II. The Abusive Lien Statute

¶22    Landowners also contend that the district court erred by concluding that the mechanics' liens were not abusive and therefore did not entitle them to an award of statutory damages under the Abusive Lien Statute. They argue that the evidence did not support the district court's finding that Contractor had a good-faith belief that it was entitled to liens in the amounts sought.

¶23 The Abusive Lien Statute criminalizes the intentional filing of "a claim of lien against any property containing a greater demand than the sum due to be recorded or filed" with the intent to cloud title, to use the lien to mulct an amount greater than that actually owed, or to procure an unjustified advantage. *See* Utah Code Ann. § 38-1-25(1) (LexisNexis 2010); *id.* § 38-1a-308(1) (LexisNexis 2014). It also provides that an abusive lienor is liable to the property owner for statutory damages. *See id.* § 38-1-25(2) (LexisNexis 2010); *id.* § 38-1a-308(2)(b) (LexisNexis 2014).

¶24 We will only disturb a district court's findings of fact if they are "against the clear weight of the evidence, or if [we] otherwise reach[] a definite and firm conviction that a mistake has been made." *Western Capital & Sec., Inc. v. Knudsvig*, 768 P.2d 989, 991 (Utah Ct. App. 1989) (citation and internal quotation marks omitted). A district court's findings of fact "are clearly erroneous if the appellant can show that they are without adequate evidentiary foundation." *Id.*

¶25 Here, the district court was "not convinced that [Contractor's] actions were abusive." It found that Contractor "was acting under a good faith belief that [it was] entitled to a mechanics' lien in the amount sought." On appeal, Landowners assert that Contractor "knew [it] sought more than was actually due." The only evidence Landowners identify on this point is the fact that the filed liens totaled $71,105.97 while one of Contractor's employees testified that the amount due was only $59,891.88. Although the district court did not understand how Contractor arrived at the incorrect amount, it found that after litigation began, Contractor "realized that [its] request was for too much money, and [it] adjusted [its] demands to reflect a more accurate amount of the sum owing." This finding is at least somewhat supported by Contractor's explanation to the district court that Contractor had misapplied the $4,000 retainer in its original lien amount calculations.

¶26    There is simply no evidence in the record that Contractor inflated the amount of the lien with the intent to cloud title, to extract more from Landowners than was due, or to procure an unjustified advantage. *See* Utah Code Ann. § 38-1-25. We cannot agree with Landowners that the mere existence of a discrepancy between the lien amounts and the amount allegedly due renders the court's finding of good faith "without adequate evidentiary foundation." *See Western Capital*, 768 P.2d at 991. Indeed, the only evidence Landowners cite is no more likely to prove bad faith than it is to prove good faith marred by bad math skills. Where the evidence is susceptible to two equally plausible interpretations, we cannot say that the district court's election to believe one of those interpretations over the other is "against the clear weight of the evidence." *See id.* (citation and internal quotation marks omitted). And we are not convinced, let alone firmly or definitely, that a mistake has been made here. *See id.* We do not disturb the district court's findings that the overage was a good-faith mistake. Consequently, we see no error in the district court's denial of an award under the Abusive Lien Statute.

### III. Unjust-Enrichment Claim

¶27    Landowners contend that the district court's "dismissal of [Contractor's] cause of action for unjust enrichment was correct, but the articulated reasons are insufficient." The district court found that Contractor had conferred a benefit on Landowners and that Landowners' retention of that benefit was inequitable but also that Contractor had failed to prove the amount of that benefit. The district court therefore determined that it was "unable to award the damages requested." Landowners argue that the district court's findings—that Contractor had conferred a benefit on them and that they had inequitably retained it— were clearly erroneous.

¶28    Although Landowners extensively analyze these claims, they do not explain how the allegedly erroneous findings affect

their substantial rights. After all, the claim they argue should have been dismissed *was* dismissed.

¶29　"The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Utah R. Civ. P. 61. To succeed on appeal, appellants must show that an error occurred and that the error somehow affected their substantial rights. *See Wardell v. Jerman*, 423 P.2d 485, 487 (Utah 1967) (affirming after explaining that the appellant failed to show an error whose absence would have resulted in a "reasonable likelihood that there would have been a contrary result"); *Hales v. Peterson*, 360 P.2d 822, 825 (Utah 1961) ("[T]he judgment should not be disturbed unless it is shown that there is error which is substantial and prejudicial in the sense that it appears there is a reasonable likelihood that the result would have been different in the absence of such error . . . ."); *see also ProMax Dev. Corp. v. Mattson*, 943 P.2d 247, 256 (Utah Ct. App. 1997) ("[A]n appellant must show not only that an error occurred, but [also] that it was substantial and prejudicial in that the appellant was deprived in some manner of a full and fair consideration of the disputed issues." (citation and internal quotation marks omitted)). Carrying this burden is particularly important where, as here, the appellant prevailed on the primary issue at trial yet seeks appellate review with an eye toward securing the same legal result on different grounds.

¶30　Here, Landowners do not assert that the result would have differed in the absence of the alleged errors. Nor do they explain how the alleged errors affected their substantial rights. Accordingly, we decline to further address this contention. *See* Utah R. Civ. P. 61.

## IV. Lien-Timeliness Claim

¶31　Landowners further contend that the district court erred by failing to enter findings regarding the timeliness of the mechanics' liens notices. Landowners argue that Contractor

failed to file the liens within 180 days of completing the preparatory work. The liens were filed on May 8, 2009. Contractor points to trial evidence that it had performed fifty-seven hours of work in the 90 days prior to May 8, 2009. It also refers to the plat it submitted to the county on February 24, 2009. Landowners dismiss these pieces of evidence as "trivialities" and claim that their alleged ignorance of this preparatory work at the time it was performed precludes the use of that work to toll the 180-day period. Regardless of the merits of this claim, Landowners do not even attempt to explain how the district court's alleged failure to enter findings regarding timeliness affected their substantial rights, especially in light of the fact that the district court ultimately found the liens invalid for other reasons. *See supra* ¶ 29. Thus, we do not further address this contention.

## V. Miscellaneous Findings of Fact

¶32    Landowners contend that the district court's "findings of fact on several material issues are against the clear weight of the evidence, clearly erroneous, and must be corrected." Specifically, they argue that the existence of conflicting evidence relating to four findings renders the evidence supporting those findings insufficient.[4] But the existence of a conflict in the evidence does

---

4. Landowners do not explain the import of the disputed findings. The district court found that Developer had set up a conference call with Landowners and Contractor, despite Landowners' testimony that they were not aware Contractor was on the line. The district court also found that one of the landowners attended a county planning commission meeting despite his testimony that he did not. The district court found that Contractor dug a test well on Landowners' property despite a claim that the well was on a neighbor's property. And based on Contractor's testimony, the district court found that Landowners had participated in discussions with Contractor.

(continued…)

not render the totality of the evidence insufficient to support a finding. *State v. Black*, 2015 UT App 30, ¶ 19, 344 P.3d 644. Rather, it is the role of the factfinder to examine and resolve such conflicts. *Id.* Here, the district court functioned as the factfinder, and it was therefore proper for the court to resolve those conflicts. In any event, Landowners do not explain the significance of the four findings of fact or how they impact any of the district court's legal rulings. Nor do Landowners claim that the court would have reached a different result in the absence of the alleged errors. *See supra* ¶ 29. We therefore decline to address this contention.

## VI. Contractor's Cross-Appeal

¶33 Contractor cross-appeals, contending that the district court clearly erred by finding that Developer was not Landowners' agent or authorized representative and by finding that Landowners did not authorize Contractor's work directly. Contractor further contends that the court erred by determining that the law required an agency relationship between Developer and Landowners in order for Landowners to be subject to a lien for work Developer requested. We review a district court's interpretation of a statute for correctness and its factual findings for clear error. *Town of Leeds v. Prisbrey*, 2008 UT 11, ¶ 5, 179 P.3d 757.

### A.    The District Court's Findings

¶34 Contractor asserts that the district court made two clearly erroneous findings: first, that Developer was not Landowners' agent or other authorized representative and, second, that Landowners did not directly authorize Contractor's work. A district court's "findings of fact are clearly erroneous if the

---

(…continued)

Landowners assert that this evidence is insufficient but do not go so far as to claim that they did not participate in the discussions.

appellant can show that they are without adequate evidentiary foundation." *Western Capital & Sec., Inc. v. Knudsvig*, 768 P.2d 989, 991 (Utah Ct. App. 1989). We will only disturb those findings of fact if they are "against the clear weight of the evidence, or if [we] otherwise reach[] a definite and firm conviction that a mistake has been made." *Id.* (citation and internal quotation marks omitted). Logically, to show that a factual finding is against the clear weight of the evidence, an appellant must candidly recount all of the evidence supporting the finding and explain why it is outweighed by the competing evidence. *See Dillon v. Southern Mgmt. Corp. Ret. Trust*, 2014 UT 14, ¶ 59, 326 P.3d 656; *State v. Mitchell*, 2013 UT App 289, ¶ 31, 318 P.3d 238 ("Formal briefing requirements aside, an argument that does not fully acknowledge the evidence supporting a finding of fact has little chance, as a matter of logic, of demonstrating that the finding lacked adequate factual support." (citation and internal quotation marks omitted)).

¶35    Here, Contractor fails to identify the evidence supporting the district court's finding that Developer was not acting as an agent or other authorized representative. For example, the court considered subdivision applications listing the owners as Developer and Contractor, rather than Landowners. Similarly, Contractor does not mention the evidence supporting the district court's finding that Landowners had not directly authorized Contractor's work, such as the facts that Developer had to grant permission for Contractor to communicate with Landowners and that Contractor had to seek Developer's approval to undertake any modifications requested by Landowners. Instead, Contractor merely highlights and reargues the evidence it presented at trial. But the factfinder—the district court—already weighed Contractor's evidence and found it wanting. Without recounting and addressing the evidence the district court found persuasive, Contractor cannot demonstrate that the evidence relied upon by the district court was inadequate or clearly outweighed by competing evidence. We therefore reject Contractor's claim that the district court's findings were clearly erroneous.

B.      The District Court's Conclusions of Law

¶36     Contractor also contends that the district court erroneously read the law to require an agency relationship between Developer and Landowners before Landowners' property could be subject to a lien for work requested by Developer. "We review a district court's interpretation of a statute for correctness." *H.U.F. v. W.P.W.*, 2009 UT 10, ¶ 19, 203 P.3d 943.

¶37     Utah Code section 38-1-3 provided that "all persons performing [qualifying work] shall have a lien upon the property upon or concerning which they have rendered service . . . whether at the instance of the owner or any other person acting by his authority as agent, contractor, or otherwise." *See* Utah Code Ann. § 38-1-3 (LexisNexis 2010) (current version at *id.* § 38-1a-301 (LexisNexis 2014)). Contractor asserts that the district court erroneously determined that "in order for [Contractor's] lien claim to be valid, [Developer] had to be an express 'agent' of [Landowners]." Contractor points us to a case in which the Utah Supreme Court noted that "the interest of the vendor cannot be subjected to mechanic's liens unless the vendor consents either through ratification or by giving the vendee implied or express authority to bind him." *See Burton Walker Lumber Co. v. Howard*, 66 P.2d 134, 136 (Utah 1937). Contractor urges us to hold that Developer fell within the statutory category of "or otherwise" because such a reading would comport with *Burton Walker*.

¶38     We note that under a plain reading of the statute anyone falling into the category of "or otherwise" under Utah Code section 38-1-3 must still satisfy the requirement of "acting by [the owner's] authority." *See* Utah Code Ann. § 38-1-3 (LexisNexis 2010). But here, the district court found that Developer was not acting under Landowners' authority. We have explained that Contractor has failed to demonstrate clear error in that finding. *See supra* ¶¶ 34–35. As a result, Contractor cannot show that Developer qualifies as a person "acting by [an owner's]

authority" whether that be as an "agent, contractor, or otherwise." *See* Utah Code Ann. § 38-1-3. Additionally, because Contractor has not shown that the district court clearly erred in finding that Landowners did not authorize Contractor's work, we cannot conclude that the district court erred in determining that Contractor's work was not performed "at the instance of the owner." *See id.*

## VII. Attorney Fees on Appeal

¶39    Landowners contend that they are entitled to an award of their attorney fees incurred on appeal. The general rule is that when a party who received attorney fees below prevails on appeal, that party is also entitled to fees reasonably incurred on appeal. *See Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998). Here, Landowners did not receive attorney fees below. However, we have determined that the district court erred in not awarding attorney fees to Landowners under the Attorney Fee Statute. Landowners will therefore receive an award of attorney fees incurred below and have prevailed on this issue on appeal. Accordingly, they are entitled to an award of the attorney fees incurred on appeal, insofar as allocable to the mechanics' lien issue. *See Holladay v. Storey*, 2013 UT App 158, ¶¶ 49–50, 307 P.3d 584; *see also Gardner v. Madsen*, 949 P.2d 785, 792 (Utah Ct. App. 1997) (remanding for an award of attorney fees "for the issues upon which plaintiff has prevailed on appeal"). Specifically, we award Landowners their attorney fees incurred on appeal relating to the issues discussed in Parts I and VI but deny any attorney fees incurred on appeal for the issues discussed in Parts II, III, IV, and V.

## CONCLUSION

¶40    We affirm the district court's finding that Developer was not Landowners' agent or other authorized representative. We reverse the district court's denial of attorney fees to Landowners under the Attorney Fee Statute but affirm the denial of statutory

damages under the Abusive Lien Statute. We decline to address the numerous issues Landowners prevailed upon at trial yet nevertheless elected to raise on appeal. We remand to the district court to calculate and enter an award to Landowners of the attorney fees they reasonably incurred below. We direct the district court on remand to calculate and enter an award to Landowners of the attorney fees they reasonably incurred on appeal relating to the mechanics' lien issue on which they prevailed.

———————