2007 UT 54

**STATE of Utah, in the interest of Z.C., a person under eighteen years of age.**

**Z.C., Petitioner.**

**No. 20060096.**

Supreme Court of Utah.

July 17, 2007.

PARRISH, Justice:

## BACKGROUND

¶ 1 When she was thirteen years old, Z.C. engaged in consensual[1] sex with a twelve-year-old boy and became pregnant. The state prosecutor chose to file delinquency petitions against both Z.C. and the boy for sexual abuse of a child under Utah Code section 76–5–404.1, a crime that would constitute a second degree felony if committed by an adult. The twelve-year-old boy was adjudicated delinquent and given probation. Z.C. moved to dismiss the delinquency petition filed against her on the grounds that it violated her constitutional rights and that the legislature could not have intended such a result. The juvenile court denied Z.C.'s motion.

¶ 2 Z.C. then entered an admission to the delinquency petition on condition that she be able to appeal the denial of her motion to dismiss. As a result of her admission, the juvenile court adjudicated Z.C. delinquent for sexual abuse of a child but imposed a relatively light punishment. The court ordered her to obey the reasonable requests of her parents, to write an essay regarding her child and the effect of her actions on the child, to have no unsupervised contact with the father of her child, to provide a DNA sample, and to pay a $75 DNA processing fee.

¶ 3 Z.C. appealed to the Utah Court of Appeals, which, "with some reluctance," affirmed the juvenile court. *State ex rel. Z.C.*, 2005 UT App 562, ¶ 1, 128 P.3d 561. We granted certiorari to review the court of appeals' decision.

## ANALYSIS

¶ 4 Z.C. presents two arguments to this court. First, Z.C. asserts that it was not the legislature's intent that a child be charged with sexual abuse of a child for engaging in consensual sexual activity with another child.

Mark L. Shurtleff, Att'y Gen., Matthew D. Bates, Asst. Att'y Gen., Salt Lake City, and Mark R. DeCaria, Ogden, for the State.

Randall W. Richards, Dee W. Smith, Ogden, for Z.C.

1. Throughout this opinion, we employ the term "consensual" in its conventional, rather than its legal, sense. Children under the age of fourteen cannot legally consent to intercourse or sexual touching in the state of Utah. Utah Code Ann. § 76–5–406(9) (2003).

Second, Z.C. asserts that if this were the legislature's intent, Utah Code section 76-5-404.1 violates her state constitutional right to the uniform operation of the law. *See* Utah Const. art. I, § 24.

¶ 5 We address the statutory claim first because " 'this Court should avoid addressing constitutional issues unless required to do so.' " *Lyon v. Burton*, 2000 UT 19, ¶ 10, 5 P.3d 616 (quoting *World Peace Movement of Am. v. Newspaper Agency Corp.*, 879 P.2d 253, 257 (Utah 1994)). In so doing, we find that the plain language of Utah Code section 76-5-404.1 allows Z.C. to be adjudicated delinquent for child sex abuse. However, we also find that applying the statute to treat Z.C. as both a victim and a perpetrator of child sex abuse for the same act leads to an absurd result that was not intended by the legislature. As such, we reverse the court of appeals and vacate Z.C.'s delinquency adjudication. We therefore need not reach her constitutional claim.

## I. THE PLAIN LANGUAGE OF UTAH CODE SECTION 76-5-404.1

¶ 6 "When interpreting statutes, our primary goal is to evince the true intent and purpose of the Legislature." *State v. Martinez*, 2002 UT 80, ¶ 8, 52 P.3d 1276 (internal quotation marks omitted). The first step of statutory interpretation is to evaluate the best evidence of legislative intent: "the plain language of the statute itself." *Id.* "When examining the statutory language we assume the legislature used each term advisedly and in accordance with its ordinary meaning." *Id.*

¶ 7 Utah's child sex abuse statute, which deals with sexual touching that does not amount to rape of a child,[2] reads as follows:

(1) As used in this section, "child" means a *person* under the age of 14.

(2) A *person* commits sexual abuse of a child if, under circumstances not amount-

ing to rape of a child, object rape of a child, sodomy upon a child, or an attempt to commit any of these offenses, the actor touches the anus, buttocks, or genitalia of any child, the breast of a female child, or otherwise takes indecent liberties with a child, or causes a child to take indecent liberties with the actor or another with intent to cause substantial emotional or bodily pain to *any person* or with the intent to arouse or gratify the sexual desire of *any person* regardless of the sex of any participant.

Utah Code Ann. § 76-5-404.1(1)-(2) (2003) (emphasis added).

¶ 8 Z.C. contends that children under the age of fourteen cannot commit child sex abuse because they are not included within the definition of a "person" under this statute. More specifically, she argues that the juxtaposition of the definition of the term "child" in subsection (1) with the statute's use of the term "person" in subsection (2) creates an ambiguity as to whether children are included within the term "person." A close reading of the statute, however, belies the proposition that such a limited definition of the term "person" is plausible.

¶ 9 The statute itself defines a child as a "person under the age of 14," tacitly acknowledging that a child falls within the definition of the more general term "person." In addition, excluding children under the age of fourteen from the definition of "person" is problematic because the statute uses the term "person" to discuss the victim of the crime. In order to convict an adult of child sex abuse, the State must show that the individual acted either with intent to sexually gratify any person or with intent to cause substantial emotional or bodily harm to any person. *Id.* § 76-5-404.1(2). If children are excluded from the definition of "person" under this statute, an adult who sexually touched a child with the sole intent to emotionally damage the child could not be held

---

**2.** "A person commits rape of a child when the person has sexual intercourse with a child who is under the age of 14." Utah Code Ann. § 76-5-402.1(1) (2003). Z.C. admitted having intercourse with a twelve-year-old boy and did, in fact, become pregnant. Under the literal language of the statute, therefore, both Z.C. and the

twelve-year-old boy could have been adjudicated delinquent for rape of a child, a first degree felony if committed by an adult, which carries a minimum six-year sentence without parole and may be punished by life imprisonment without possibility of parole. *Id.* §§ 76-5-402.1(2), 76-3-406.

accountable because the child would not be a "person." Avoiding such a patently absurd result while maintaining Z.C.'s interpretation of the statute requires an unreasonably tortured reading in which "person" means one thing at the beginning of subsection (2) and quite another at the end of that same subsection.

■ ¶ 10 We accordingly find that Z.C.'s proposed interpretation of the statute is untenable and instead read the statute pursuant to the commonly accepted definition of "person," which includes children. *Black's Law Dictionary* 1162 (7th ed.1999) (defining a person as "[a] human being"); *Webster's New Twentieth Century Dictionary* 1338 (2d ed.1983) (defining a person as "an individual human being ... an individual man, woman, or child"). Thus, under the plain language of the statute, a child is a person and may be adjudicated delinquent for sexually touching another child with the requisite intent.

## II. ABSURD RESULT

■ ¶ 11 Normally, where the language of a statute is clear and unambiguous, our analysis ends; our duty is to give effect to that plain meaning. However, "[a]n equally well-settled caveat to the plain meaning rule states that a court should not follow the literal language of a statute if its plain meaning works an absurd result."[3] *Savage v. Utah Youth Vill.*, 2004 UT 102, ¶ 18, 104 P.3d 1242. The absurd results canon of statutory construction recognizes that although "the plain language interpretation of a statute enjoys a robust presumption in its favor, it is also true that [a legislative body] cannot, in every instance, be counted on to have said what it meant or to have meant what it said." *FBI v. Abramson*, 456 U.S. 615, 638, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982) (O'Connor, J., dissenting).

■ ¶ 12 In defining the parameters of what constitutes an absurd result, we note the inherent tension in this canon of con-

struction between refraining from blind obedience to the letter of the law that leads to patently absurd ends and avoiding an improper usurpation of legislative power through judicial second guessing of the wisdom of a legislative act. *See West Jordan v. Morrison*, 656 P.2d 445, 446 (Utah 1982) ("[I]t is not the duty of this Court to assess the wisdom of the statutory scheme.") As was recognized by Blackstone, this tension defines the proper boundaries of the absurd result doctrine:

> [A]nd if there arise out of [the acts of parliament] collaterally any absurd consequences, manifestly contradictory to common reason, they are, with regard to those collateral consequences, void. I lay down the rule with these restrictions; though I know it is generally laid down more largely, that acts of parliament contrary to reason are void. But if the parliament will positively enact a thing to be done which is unreasonable, I know of no power that can control it: and the examples usually alleged in support of this sense of the rule do none of them prove, that where the main object of a statute is unreasonable the judges are at liberty to reject it; for that were to set the judicial power above that of the legislature, which would be subversive of all government. But where some collateral matter arises out of the general words, and happens to be unreasonable; there the judges are in decency to conclude that this consequence was not foreseen by the parliament, and therefore they are at liberty to expound the statute by equity, and only quoad hoc disregard it.

William Blackstone, 1 *Commentaries* *91. Thus, as is common to all rules of statutory construction, the guiding star of the absurd results doctrine is the intent of the pertinent legislative body, which limits the application of this canon of construction. Rather than controverting legislative power, the absurd results doctrine functions to preserve legislative intent when it is narrowly applied. *Pub.*

---

3. In *Savage v. Utah Youth Village*, we also recognized that this court will disregard the plain language of a statute if it is " 'unreasonably confused, inoperable, or in blatant contravention of the express purpose of a statute.' " 2004 UT 102, ¶ 18, 104 P.3d 1242 (quoting *Perrine v. Kennecott*

*Mining Corp.*, 911 P.2d 1290, 1292 (Utah 1996)). Because we hold that Utah Code section 76–5–404.1 produces an absurd result in this case, we do not address other exceptions to the plain meaning rule.

*Citizen v. United States Dep't of Justice*, 491 U.S. 440, 470, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989) (Kennedy, J., concurring) ("When used in a proper manner, this narrow exception to our normal rule of statutory construction does not intrude upon the lawmaking powers of Congress, but rather demonstrates a respect for the coequal Legislative Branch, which we assume would not act in an absurd way."); *Church of the Holy Trinity v. United States*, 143 U.S. 457, 459, 12 S.Ct. 511, 36 L.Ed. 226 (1892) ("This is not the substitution of the will of the judge for that of the legislator, for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act."). Therefore, in deference to Congress, the Supreme Court has noted that this canon of statutory interpretation applies only where the result is so absurd that " 'Congress could not *possibly* have intended' " it. *Pub. Citizen*, 491 U.S. at 470, 109 S.Ct. 2558 (Kennedy, J., concurring) (quoting *FBI*, 456 U.S. at 640, 102 S.Ct. 2054 (O'Connor, J., dissenting)).

¶ 13 Other than the directive that a result must be so absurd that the legislative body which authored the legislation could not have intended it, there is no precise legal standard to determine what legislatures would consider to be an absurd result. *See* Veronica M. Dougherty, *Absurdity and the Limits of Literalism: Defining the Absurd Result Principle in Statutory Interpretation*, 44 Am. U.L.Rev. 127, 128 (1994). This comes as no surprise because the absurd, by definition, evades neat categorization. The contours of the doctrine, therefore, are best traced by referring to examples of what both the Supreme Court and this court have deemed to be an absurd result.

4. Veronica M. Dougherty, *supra* ¶ 13, at 139 & n. 51.

5. A related but separate canon of statutory interpretation states that when the statutory language

¶ 14 In one of its earliest applications of the absurd result doctrine, the Supreme Court was called upon to interpret a federal statute that made it a crime to "knowingly and willfully obstruct or retard the passage of the mail." *United States v. Kirby*, 7 Wall. 482, 74 U.S. 482, 482, 19 L.Ed. 278 (1869) (internal quotation marks omitted). The statute was applied to a sheriff and his posse who had boarded a steamboat and executed an arrest warrant for murder against a mail carrier who was in the process of transporting the mail. *Id.* at 482–83. The Court held that in order to avoid such an absurd result, it is "presumed that the legislature intended exceptions to its language." *Id.* at 487. As such, "[g]eneral terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence." *Id.* at 486. The Court supported this proposition with two frequently cited [4] historical illustrations of the principle:

> The common sense of man approves the judgment mentioned by Puffendorf, that the Bolognian law which enacted, "that whoever drew blood in the streets should be punished with the utmost severity," did not extend to the surgeon who opened the vein of a person that fell down in the street in a fit. The same common sense accepts the ruling, cited by Plowden, that the statute of 1st Edward II, which enacts that a prisoner who breaks prison shall be guilty of felony, does not extend to a prisoner who breaks out when the prison is on fire—"for he is not to be hanged because he would not stay to be burnt." And we think that a like common sense will sanction the ruling we make, that the act of Congress which punishes the obstruction or retarding of the passage of the mail, or of its carrier, does not apply to a case of temporary detention of the mail caused by the arrest of the carrier upon an indictment for murder.

*Id.* at 487.

¶ 15 More recent examples of what has been considered absurd can be found in the decisions of this court.[5] In *Tschaggeny*

plausibly presents the court with two alternative readings, we prefer the reading that avoids absurd results. *State v. Redd*, 1999 UT 108, ¶ 12, 992 P.2d 986; *Clover v. Snowbird Ski Resort*, 808

*v. Milbank Insurance Co.*, 2007 UT 37, ¶¶ 26–28, 163 P.3d 615, we were called upon to interpret a statute that requires the court to grant the plaintiff interest on special damages awarded by the jury "from the date of the occurrence of the act giving rise to the cause of action to the date of entering the judgment." Utah Code Ann. § 78–27–44(2) (2002). In that case, the defendant had made a payment to the plaintiff well before the date of the trial, which the trial judge had deducted from the final jury award. *Tschaggeny*, 2007 UT 37, ¶ 7, 163 P.3d 615. Under the relevant statute, however, the plaintiff sought interest on this pretrial payment for the full statutory period, even for the time after the money had already been remitted to her. *Id.* ¶ 27. We found that "[b]ecause the clear purpose of section 78–27–44(2) is to compensate wronged parties for delays in recovering damages, it is absurd to require a defendant to pay interest on money that has already been remitted to the plaintiff." *Id.* ¶ 28.

¶ 16 And in *Savage*, 2004 UT 102, ¶¶ 14, 19, 104 P.3d 1242, we were called on to interpret Utah Code section 78–12–25.1(2), which provides that "[a] person shall file a civil action for intentional or negligent sexual abuse suffered as a child ... within four years after the person attains the age of 18 years." We noted that the plain language of the statute would bar a minor from pursuing a civil suit for sexual abuse until he attained 18 years of age. *Savage*, 2004 UT 102, ¶ 19, 104 P.3d 1242. Thus, a plain language reading would have barred the three-year-old victim in that case from filing a civil suit for fifteen years from the time of abuse. *Id.* ¶¶ 5, 19. We simply noted that "[s]uch a result would be absurd." *Id.* ¶ 19.

¶ 17 With these precedents in mind, we examine whether Utah Code section 76–5–404.1 has been applied so as to produce an absurd result in this case. Because we conclude that the legislature could not possibly have intended to punish both children under the child sex abuse statute for the same act of consensual heavy petting,[6] we hold that applying the plain language of the statute in this case produces an absurd result.

¶ 18 Sexual abuse of a child is one of the most heinous crimes recognized by our penal code. The gravity of this crime is reflected by the fact that it is punished as a second degree felony if committed by an adult.[7] Child sex abuse merits serious penalties because of the extreme psychological harm that the perpetrator causes the victim. Therefore, like all forms of sexual assault, child sex abuse presupposes that a single act of abuse involves a victim, whom the statute endeavors to protect, and a perpetrator, whom the statute punishes for harming the victim. *See* Utah Code Ann. § 76–5–404.1(4)(b)–(d), (f), (h), (i) (2003) (describing the aggravating factors, which if perpetrated against "the victim" merit an elevated charge of aggravated sexual abuse of a child); *id.* § 76–5–406 (describing the situations in which "the victim" has not consented for sexual assault crimes); *id.* § 76–5–405(1) (describing the aggravating factors, which if perpetrated against "the victim" merit an elevated charge of aggravated sexual assault); *id.* § 76–5–402 (referencing "the victim" of rape); *id.* § 76–5–404 (referencing "the victim" of forcible sexual abuse); *id.* § 76–5–402.2 (referencing "the victim" of object rape).

¶ 19 The State, however, applies Utah Code section 76–5–404.1 in an unprecedented

---

P.2d 1037, 1045 n. 39 (Utah 1991). We avoid citing cases that utilize this form of statutory interpretation because this canon of construction does not necessitate the level of caution required when this court interprets a statute contrary to its plain meaning.

6. It is undisputed that Z.C. and the boy engaged in more than just sexual touching, but we must analyze the absurd result question in the context of the law actually applied and the act with which the State chose to charge Z.C., not the law that might have been applied or the act with which the State could have charged Z.C.

7. If one of several aggravating factors can be shown by the State, a perpetrator can be convicted of aggravated sexual abuse of a child, a first degree felony if committed by an adult, which is punishable by a minimum of five years of imprisonment without parole, and potentially life imprisonment without parole. Utah Code Ann. §§ 76–5–404.1(4)–(5), 76–3–406 (2003). Under the State's proposed application of the law, therefore, if Z.C. committed more than five "separate acts" of sexual touching, she could be adjudicated delinquent for aggravated sexual abuse of a child. *See id.* § 76–5–404.1(4)(g).

manner. By filing delinquency petitions for child sex abuse against both participants for sexually touching one another, the State treats both children as perpetrators of the same act. In this situation, there is no discernible victim that the law seeks to protect, only culpable participants that the State seeks to punish.[8] We know of no other instance in which the State has attempted to apply any sexual assault crime to produce such an effect.[9]

¶ 20 We acknowledge that the legislature has demonstrated its intent to punish both participants in victimless, extramarital sexual activity under Utah's adultery and fornication statutes. *Id.* §§ 76–7–103, –104. However, these statutes differ from sexual assault crimes, such as child sex abuse, in both the theory and degree of punishment. Rather than punishing an actor who has perpetrated a crime against a victim, these laws demonstrate the legislature's disapproval of the acts of both participants for violating a moral standard. *Cf. State v. Houston,* 2000 UT App 242, ¶ 11, 9 P.3d 188 (noting that Utah Code section 76–3–201(4), which allows a court to order restitution to the victim of a crime, did not apply to a conviction of fornication because it involves consensual sexual conduct). Because these crimes do not involve a victim, they involve a lesser degree of punishment. Both adultery and fornication are punishable as class B misdemeanors. Utah Code Ann. §§ 76–7–103(2), –104(2) (2003). Thus, while the legislature clearly could have intended some degree of simultaneous culpability for both Z.C. and the twelve-year-old boy under the fornication statute in order to discourage their admitted-

ly reckless and age-inappropriate behavior, it is absurd to conclude that the legislature intended to simultaneously punish both children for child sex abuse, a crime that clearly envisions a perpetrator and a victim.

¶ 21 A review of the floor debates regarding the 1983 enactment of the Child Kidnaping and Sexual Abuse Act, L.1983, ch. 88, § 24, which created Utah Code section 76–5–404.1, reveals no evidence that the legislature contemplated application of the statute to situations where the same child was both victim and perpetrator. *See* House floor debate on H.B. 209, March 1, 1983; Senate floor debate on H.B. 209, March 8, 1983. Although we generally do not consult legislative history where the meaning of the statute is clear, after finding that the plain meaning has been applied in an absurd manner, we seek to confirm that the absurd application was indeed unintended by the legislature. *See Green v. Bock Laundry Mach. Co.,* 490 U.S. 504, 527, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989) (Scalia, J., concurring), *superseded by statute as stated in United States v. Spencer,* 25 F.3d 1105, 1109 (D.C.Cir.1994) ("I think it entirely appropriate to consult all public materials, including the background of Rule 609(a)(1) and the legislative history of its adoption, to verify that what seems to us an unthinkable disposition ... was indeed unthought of, and thus to justify a departure from the ordinary meaning of the word "defendant" in the Rule. For that purpose, however, it would suffice to observe that counsel have not provided, nor have we discovered, a shred of evidence that anyone has ever proposed or assumed such a bizarre disposition.").

8. Taking each delinquency adjudication separately, of course, there is only one perpetrator and one victim. In the twelve-year-old boy's adjudication, he stood in the role of perpetrator and Z.C. stood in the role of victim, while in Z.C.'s adjudication, the State simply reversed these roles. In other words, the children were alternatively treated as both victims and perpetrators for the same act. Because it would be unthinkable to file even "civil" juvenile court proceedings against a true victim of such a heinous crime, we conclude that the State's double prosecution of these children is best characterized as charging both as perpetrators for the same act.

9. The primary fail-safe against the absurd application of criminal law is the wise employment of

prosecutorial discretion, a quality that is starkly absent in this case. While the State makes no attempt to defend the prosecution's charging decision, it suggests that the particular offense selected by the prosecutor as the basis for the delinquency petition is not significant because a juvenile delinquency adjudication is not a criminal conviction, but merely a means to bring the juvenile within the guiding supervision of the juvenile court. If this is truly the case, it begs the question of why the prosecutor could not have accomplished the intended result by basing the delinquency petition on a victimless offense that more accurately fits the conduct at issue.

¶ 22 Recent legislative developments bolster our conclusion that the children's simultaneous delinquency adjudications could not have been intended by the legislature. In reaction to the court of appeals' disposition in this case, the legislature passed a bill that amended the diversion statute to avoid the application of the child sex abuse statute in similar cases. *See* Juvenile Offenses Diversion Amendment, L.2006, ch. 166, § 1 (codified as amended at Utah Code Ann. § 77–2–9(2) (Supp.2006)). Although the previous version of the statute forbade diversions for crimes "involving a sexual offense against a victim who is under the age of 14," Utah Code Ann. § 77–2–9 (2003), the amended version allows diversions for sexual offenses committed by individuals under the age of sixteen as long as "the person did not use coercion or force; there is no more than two years' difference between the ages of the participants; and it would be in the best interest of the person to grant diversion," *id.* § 77–2–9(2) (Supp.2006). The State argues that because the legislature did not change the underlying child sex abuse statute, it did envision the prosecution of victims as perpetrators, as happened in this case. We disagree. The underlying purpose of the amendment was undoubtedly to prevent future delinquency adjudications similar to Z.C.'s. In fact, the sponsor of the bill in the House stated, "I think most of us would agree that when twelve and thirteen years olds get involved in this kind of behavior it's certainly not something we want to allow or encourage. We also probably do not want to convict them both of 'rape of a child'...." Comments of Rep. Falk, House floor debate on S.B. 167, March 1, 2006.

¶ 23 We conclude that the legislature could not have intended the child sex abuse statute to be applied to punish Z.C. for the conduct at issue. And the fact that this is a juvenile court disposition, in which the judge enjoys considerable latitude in crafting punishments and assigning state services designed to help the child, does not change our conclusion. No amount of judicial lenity to compensate for the absurd application of the law changes the fact that the application of the law was absurd to begin with. Moreover, labeling Z.C. with the moniker of "child abuser," even within the juvenile court system, can have serious consequences that were not intended by the legislature. A delinquency adjudication for sexual abuse of a child can lead to sentencing enhancements for any offenses Z.C. might commit while she is a juvenile or even as an adult if her juvenile record is not expunged. Such an adjudication also has the potential to affect any civil proceedings related to the custody of her child or any future attempts to seek child support from the father.

¶ 24 We therefore vacate Z.C.'s adjudication. We stress, however, that our holding is narrowly confined to the application of Utah Code section 76–5–404.1 in situations where no true victim or perpetrator can be identified. Even among children under the age of fourteen, there are unfortunately situations where an older or more physically mature child abuses a younger or smaller child. In cases where there is an identifiable distinction between the perpetrator and the victim, it is manifestly logical to conclude that the legislature intended to include such acts within the scope of Utah Code section 76–5–404.1. In Z.C.'s case, however, where both children were under the age of fourteen and were of similar age, where both children met the intent requirement of the statute, and where there was no evidence of any coercion or force, we conclude that application of the child sex abuse statute produces an absurd result.[10]

## CONCLUSION

¶ 25 Even though the plain language of section 76–5–404.1 allows Z.C. to be adjudicated delinquent for sexual abuse of a child, we conclude that the filing of delinquency petitions against both participants produces

10. Our analysis would likewise apply to all cases similar to Z.C.'s even if the State elected to charge only one of the minors involved. We hold that the application of Utah Code section 76–5–404.1 is absurd where no true perpetrator or victim exists. And the State may not create a perpetrator and a victim through selective prosecution. Rather, charges against the perpetrator must be based upon a material gap in the maturity of the two participants, evidence of coercion or force, or a wider age differential than exists in this case.

an absurd result not intended by the legislature because, like all sexual assault crimes, the statute presupposes a perpetrator and a victim. We therefore hold that the juvenile court erred in denying Z.C.'s motion to dismiss the delinquency petition. We remand this matter to the court of appeals with instructions to remand it to the juvenile court to vacate Z.C.'s delinquency adjudication.

¶ 26 Chief Justice DURHAM, Justice DURRANT, and Justice NEHRING concur in Justice PARRISH's opinion.

¶ 27 Associate Chief Justice WILKINS concurs in the result.