**2015 UT App 307**

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF T.S.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

T.S.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20140656-CA
Filed December 31, 2015

Third District Juvenile Court, Salt Lake Department
The Honorable Christine S. Decker
No. 1086746

Monica Maio and Tasha M. Williams, Attorneys
for Appellant

Sean D. Reyes and Jeanne B. Inouye, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES STEPHEN L. ROTH and JOHN A. PEARCE concurred.[1]

CHRISTIANSEN, Judge:

¶1     T.S. appeals from the juvenile court's denial of his motion
to dismiss a delinquency petition filed against him for rape of a
child. He contends that strict-liability crimes cannot

---

1. Judge John A. Pearce participated in this case as a member of
the Utah Court of Appeals. He became a member of the Utah
Supreme Court on December 17, 2015, before this decision
issued.

constitutionally be applied to individuals under the age of eighteen because juveniles are too immature to have constructive knowledge that their actions might be criminal. T.S. also contends that application of the rape-of-a-child statute to the facts of this case would produce an absurd result. *See In re Z.C.,* 2007 UT 54, 165 P.3d 1206. Because T.S. fails to demonstrate that juveniles' diminished capacity renders their adjudication under a strict-liability statute unconstitutional, and because T.S. does not challenge the juvenile court's factual findings that differentiate his case from *In re Z.C.,* we affirm.

BACKGROUND

¶2 T.S. and the State stipulated to the facts recounted in this paragraph. T.S., aged fifteen, and A.R., aged twelve, attended the same school. They began dating. Shortly thereafter, A.R. sent a text message to T.S. telling him that she liked short shorts. T.S. replied that he too liked short shorts and invited A.R. to his house. She accepted his invitation and walked to T.S.'s home. After she arrived, the two began kissing. A.R. told T.S. that she had had sex before, and the two engaged in mutually welcome sexual intercourse.

¶3 We recite further facts as briefed by the parties. A.R. later wrote about the encounter in her diary. A.R.'s father read her diary and apparently reported the incident to the police. The police interviewed A.R., who described T.S. as "sensitive in a way that's sweet" and stated that "we knew everything that was going on." The State filed a delinquency petition in juvenile court against T.S. for rape of a child, a strict-liability offense under Utah Code section 76-5-402.1 (the Statute). If committed by an adult, rape of a child would be a first degree felony. *See* Utah Code Ann. § 76-5-402.1(2) (LexisNexis 2012). As part of the juvenile proceedings against T.S., A.R. and her mother completed a victim impact statement; A.R.'s mother wrote that

"[b]oth minors are equally accountable for their actions. Both parties owe each other an apology[.]" After the petition was filed against him, T.S. voluntarily enrolled in a sexual education class that addressed healthy sexual boundaries.

¶4    T.S. filed a motion to dismiss the delinquency petition on the basis that, as applied to him, the strict-liability nature of the Statute violated his due process right to fundamental fairness and worked an absurd result. The juvenile court denied the motion. T.S. then entered an admission to unlawful sexual intercourse with a minor, conditioned on a reservation of his right to appeal the juvenile court's denial of his motion to dismiss.[2] After he entered the admission, T.S. was adjudicated as delinquent and ordered to complete sixty hours of community service with credit for the time he had spent in the sexual education class.

ISSUES AND STANDARDS OF REVIEW

¶5    T.S. contends that the Statute is unconstitutional as applied to him because it violates the guarantee of fundamental fairness under the due process clause of the Fourteenth Amendment to the United States Constitution. "Whether a statutory scheme conforms with state and federal constitutional provisions is a question of law." *State v. Lafferty*, 2001 UT 19, ¶ 66, 20 P.3d 342. Similarly, a court's decision to grant or deny a

---

2. Juvenile delinquency proceedings are not criminal in nature. *See infra* ¶ 8. The equivalent conditional-plea procedure in a Utah criminal proceeding is referred to as a *Sery* plea and allows a defendant, with the consent of the prosecution, to enter a conditional guilty plea while reserving the right to appeal a court's decision on a motion. *See, e.g.*, *State v. Rivera*, 943 P.2d 1344, 1344–45 (Utah 1997).

motion to dismiss presents a question of law. *West Valley City v. Parkinson*, 2014 UT App 140, ¶ 5, 329 P.3d 833. We review a juvenile court's resolution of a question of law for correctness. *See In re A.M.*, 2009 UT App 118, ¶ 6, 208 P.3d 1058.

¶6      T.S. also contends that applying the Statute to him produces an absurd result of the kind recognized by *In re Z.C.*, 2007 UT 54, 165 P.3d 1206. To the extent that this contention challenges the juvenile court's interpretation of statutes and case law, we review that interpretation for correctness.[3]

---

3. The State asserts that T.S.'s arguments do not address the bases of the juvenile court's decision to deny his motion to dismiss and should therefore be rejected. *See, e.g.*, *State v. Wimberly*, 2013 UT App 160, ¶ 17, 305 P.3d 1072. In his motion to dismiss, T.S. argued that the Statute was unconstitutional as applied to him because it did not take into consideration the effects of ongoing adolescent brain development. He also argued that the application of the Statute would produce an absurd result. The juvenile court rejected these arguments based on its understanding of the law. T.S.'s argument on appeal raises the same claims. Where we are asked to review the court's resolution of those claims for correctness rather than for an abuse of discretion, T.S. may properly rely on the same arguments on appeal that he raised below so long as they address his burden of demonstrating legal error in the court's decision. *See id.* But if T.S. challenged a factual finding of the court, he would have to show that the finding was clearly erroneous (ordinarily, by marshaling the evidence in support of the finding and explaining why the evidence was legally insufficient). *See Reeve & Assocs., Inc. v. Tanner*, 2015 UT App 166, ¶ 34, 355 P.3d 232. As a matter of logic, such a task will usually involve addressing the basis for the court's findings. *Id.*

ANALYSIS

I. Due Process

¶7    T.S. argues that applying the strict-liability rape-of-a-child statute to him "violates his due process guarantee to fundamental fairness because such application fails to take into account the effects of his emerging adolescent brain development on his ability to foresee and assume the risk of his conduct; weigh the immediate benefit with the risk of harm; resist peer pressure and control hormonal and other impulses; self-regulate; and, perhaps most importantly, recognize the behavior as criminally sanctionable." More specifically, he asserts that the application of the Statute "fails to allow for individualized consideration and fails to account for age and developmental limitations."

¶8    "[D]ue process takes on an altered form in juvenile courts because of the rehabilitative focus of the juvenile court system." *In re K.M.*, 2007 UT 93, ¶ 23, 173 P.3d 1279. Juvenile courts are designed to rehabilitate a juvenile's behavior "rather than merely to accuse, convict and punish." *In re Lindh*, 359 P.2d 1058, 1059 (Utah 1961). "[T]he proceedings of the juvenile court do not fall, nor are they intended to come, within what is termed criminal procedure, nor are the acts therein mentioned, as applied to children, crimes." *Mill v. Brown*, 88 P. 609, 613 (Utah 1907). Accordingly, the United States Supreme Court has stated that the same due process guarantees afforded to adults in criminal cases are not necessarily afforded to juveniles in delinquency adjudications. *See In re Gault*, 387 U.S. 1, 14 (1967).[4]

---

4. "It is claimed that juveniles obtain benefits from the special procedures applicable to them which more than offset the disadvantages of denial of the substance of normal due process." *In re Gault*, 387 U.S. 1, 21 (1967). These benefits include avoiding
(continued…)

"[T]he applicable due process standard in juvenile proceedings . . . is fundamental fairness." *McKeiver v. Pennsylvania*, 403 U.S. 528, 543 (1971) (plurality opinion).

¶9     T.S.'s argument proceeds in three steps: (1) ongoing brain development causes adolescents to evaluate situations and consequences poorly; (2) as a result, the United States Supreme Court has recognized that the United States Constitution requires that juveniles not be treated as fully competent adults in regards to the death penalty, life sentences without parole, or understanding the waiver of their rights; and (3) applying a strict-liability statute to a juvenile therefore runs afoul of the Constitution because juveniles lack awareness that their actions might be criminal.

¶10    T.S. quotes several sources that address behavioral changes during adolescence due to the process of brain development. *See generally* Sara B. Johnson, Robert W. Blum, & Jay N. Giedd, *Adolescent Maturity and the Brain: The Promise and Pitfalls of Neuroscience Research in Adolescent Health Policy*, 45 J. Adolescent Health 3, 216–21, Sept. 2009, http://www.jahonline. org/article/S1054-139X09002511/fulltext#sec3 (last visited Dec. 1, 2015); L.P. Spear, *The Adolescent Brain and Age-Related Behavioral Manifestations*, 24 Neuroscience & Behavioral Reviews 4, 417–63, June 2000; American Bar Association Juvenile Justice Center, *Kids Are Different: How Knowledge of Adolescent Development Theory Can Aid Decision-Making in Court* 21–23 (Lourdes M. Rosado ed., 2000); National Juvenile Defender Center, *Toward Developmentally Appropriate Practice: A Juvenile Court Training Curriculum* 6 (2009); Elizabeth S. Scott & Laurence Steinberg,

---

(…continued)

classification as criminals, avoiding civil disability penalties, and avoiding public scrutiny through the use of confidential proceedings. *Id.* at 23–24.

Rethinking Juvenile Justice (2010); Brief for the American Psychological Association, et al., as Amici Curiae Supporting Petitioners, *Graham v. Florida*, 560 U.S. 48 (2010) (Nos. 08-7412, 08-7621), 2009 WL 2236778. The changes identified by the sources include increased thrill-seeking, increased risk-taking, increased susceptibility to peer pressure, and ignoring future consequences in favor of immediate gratification.

¶11    T.S. explains that, in light of such research, the United States Supreme Court "has repeatedly acknowledged that juveniles are different in constitutionally significant ways." He points us to several cases: *Roper v. Simmons*, 543 U.S. 551 (2005) (holding that the imposition of the death penalty upon juvenile offenders violates the Eighth Amendment to the United States Constitution); *Graham v. Florida*, 560 U.S. 48 (2010) (holding that, in non-homicide cases, juvenile offenders cannot be sentenced to life in prison without the possibility of parole); *Miller v. Alabama*, 132 S. Ct. 2455 (2012) (holding that juvenile offenders cannot be sentenced to life in prison without parole even in homicide cases); and *J.D.B. v. North Carolina*, 131 S. Ct. 2394 (2011) (holding that the proper standard for evaluating *Miranda* claims in juvenile cases is that of a reasonable child, not that of a reasonable adult). T.S. explains that in each of these cases, the ongoing development of adolescent brains was of central importance to the Supreme Court's analysis. T.S. also refers us to two Utah cases that considered the impact of juvenile status: *In re K.M.*, 2007 UT 93, 173 P.3d 1279 (holding that, where a juvenile court had failed to ensure that a juvenile understood the nature and elements of the crime to which she was admitting, the juvenile's plea was not knowing and voluntary) and *In re D.V.*, 2011 UT App 241, 265 P.3d 803 (reversing a contempt finding against a juvenile because the court order he was accused of violating was, in light of his age, not sufficiently specific to inform him of what he was required to do or what consequences he faced for failing to obey).

¶12 T.S. continues by asserting that "application of [the Statute] to an accused who is also a child violates the due process guarantee of fundamental fairness because such application fails to account for the limitations of adolescent brain development." Specifically, he attacks the strict-liability aspect of the Statute, arguing that "[b]ecause strict liability crimes allow for punishment without a finding of criminal intent, their application must be carefully circumscribed." According to T.S., strict-liability statutes criminalize "conduct that a reasonable person should know is subject to stringent public regulation" and while "adults are presumed to have the capacity to assume those risks," that presumption cannot be applied to adolescents. He suggests, without citation to authority, that "[w]ithout this underlying concept of notice, [strict-liability] statutes make little sense." Because juveniles' brains are still developing (causing them to take risks, ignore consequences, and fall under the influence of peer pressure), he urges us to hold that it is fundamentally unfair to conclude that a juvenile "could foresee and appreciate the risk of his [or her] conduct."

¶13 The essence of T.S.'s argument is that the Statute is unconstitutional, as applied to him, because a minor accused of violating the Statute lacks notice, due to his immaturity, that "mutually welcome, non-forcible sexual intercourse [is] a criminal offense." But T.S. does not cite any authority to the effect that strict-liability statutes are unconstitutional when the defendant would not have reasonably known that his or her actions were prohibited. Indeed, proof of a culpable mental state is not a due process requirement. *See Powell v. Texas*, 392 U.S. 514, 535 (1968) (noting that the United States Supreme Court "has never articulated a general constitutional doctrine of mens rea").

¶14 The authorities relied upon by T.S. did not hold that adjudication of a juvenile as delinquent is unconstitutional when the juvenile was unaware that his or her behavior was

proscribed.[5] Rather, these cases recognized the immaturity of adolescent brains and held that, as a consequence, (1) juveniles are less culpable than adults, (2) the most severe punishments meted out to adults may amount to cruel and unusual punishment if applied to juveniles, and (3) juveniles may require greater procedural safeguards than adults. None of these considerations circumscribe the legislature's power to "declare what constitutes an offense against society and to define the elements that constitute such an offense." *See United States v. Ransom*, 942 F.2d 775, 776, 777 (10th Cir. 1991) (noting the "long history of statutory rape as a recognized exception to the requirement of criminal intent"). We conclude that T.S. has not established that due process guarantees permit a juvenile to raise ignorance of the law as a defense.

¶15    T.S. also argues that "[s]trict liability statutes purposefully allow for no individualized determinations or considerations and it is precisely this lock-step application of [the Statute] that is so directly at odds with [the Supreme Court's] reasoning in *Graham* and *Roper*." T.S. urges that "[t]he 'one size fits all' application of [the Statute] to T.S. fails to allow for individualized consideration and fails to account for age and developmental limitations." But the Supreme Court considered and rejected harsh and inflexible sentencing of juvenile offenders in those cases, not the application of strict-liability statutes to juveniles. A post-adjudication sentencing[6] is a fundamentally different process than the culpability adjudication itself, and T.S.

---

5. We recognize that T.S. cited these cases primarily to establish the proposition that courts have recognized constitutional implications arising from the differences between adolescent and adult brains.

6. We use the term "sentencing" here to include the juvenile court's order requiring T.S. to perform community service.

does not explain how or why a sentencing proceeding conducted in an unconstitutional manner can invalidate the statute prohibiting specified actions in the first place. Nor does T.S. explain how application of a strict-liability statute violates his alleged right to individualized consideration in sentencing when the juvenile court in fact considered the particular circumstances of his case, including T.S.'s voluntary participation in sexual education classes and A.R.'s victim impact statement, before ordering him to perform community service.

¶16    T.S. has not shown that juveniles are entitled to notice that their actions are illegal before they may be adjudicated delinquent. It follows that the Statute is not unconstitutional for failing to require special notice to juveniles due to their immaturity before those minors can be held responsible for strict-liability crimes.

## II. Absurd-Result Doctrine

¶17    T.S. also contends that *In re Z.C.*, 2007 UT 54, 165 P.3d 1206, "has application in determining whether [the Statute], as applied to T.S., violates the fundamental fairness guarantee of the due process clause of the Fourteenth Amendment." There, a thirteen-year-old girl and a twelve-year-old boy engaged in mutually welcome sexual touching. *In re Z.C.*, 2007 UT 54, ¶¶ 1, 17 & n.6. Delinquency petitions were filed against both children for sexual abuse of a child. *Id.* ¶ 1. The Utah Supreme Court vacated Z.C.'s adjudication, holding that the application of the statute produced an "absurd result" that could not have been intended by the legislature. *Id.* ¶ 25. The supreme court limited its holding to "situations where no true victim or perpetrator can be identified," recognizing that "[e]ven among children under the age of fourteen, there are unfortunately situations where an older or more physically mature child abuses a younger or smaller child." *Id.* ¶ 24.

¶18    T.S. urges us to apply *In re Z.C.*'s holding to his case. But the juvenile court's factual findings distinguish his case from *In re Z.C.* The court found that here, unlike in *In re Z.C.*, "[t]here is an identifiable distinction between the perpetrator and the victim." The court also noted that *In re Z.C.* concerned juveniles who were of similar ages. In contrast, the court here "[did] not find the fifteen year old [T.S.] and the twelve year old [A.R.] to be of similar ages." T.S. does not challenge these findings on appeal,[7] and we are therefore bound by them. Because the juvenile court found that a distinct perpetrator and a distinct victim existed in this case, *In re Z.C.* is not directly applicable.

¶19    T.S. also asks us to expand *In re Z.C.*'s holding to include his case, arguing that the "cultural and legal context within which [*In re Z.C.*] was issued has changed significantly in the last eight years, thereby justifying a more expansive application of the reasoning underlying the decision to the facts of this case."

¶20    First, T.S. notes that "the United States Supreme Court [has] issued several important decisions that changed the contours of juvenile delinquency jurisprudence." But, as we have noted, those decisions concerned sentencing and procedural

---

7. T.S. does assert, "In this case, there is no clear victim and perpetrator; rather, there are two 'culpable participants.' . . . They attend the same junior high school, and there is an age gap of just two years and five months between them." T.S. does not frame this as a challenge to the juvenile court's contrary findings. Even if he had, this challenge fails to carry his burden of persuasion. *See Reeve & Assocs., Inc. v. Tanner*, 2015 UT App 166, ¶ 34, 355 P.3d 232 ("Logically, to show that a factual finding is against the clear weight of the evidence [and thus clearly erroneous], an appellant must candidly recount all of the evidence supporting the finding and explain why it is outweighed by the competing evidence.").

safeguards rather than the distinction between victims and perpetrators. *See supra* ¶¶ 11, 15–16. They therefore do not suggest expansion of the absurd-result doctrine applied by *In re Z.C.*

¶21    Second, T.S. points to the rising use of social media, the prevalent sharing of sexually explicit "selfies,"[8] and the increasing ease of "sexual exploration between adolescent peers." But none of these degrade the line between cases "where no true victim or perpetrator can be identified" and cases, like T.S.'s, where the juvenile court has found that such a distinction exists. *See In re Z.C.*, 2007 UT 54, ¶ 24.

¶22    Third, T.S. contrasts *In re Z.C.*'s statement that sexual abuse of a child "merits serious penalties because of the extreme psychological harm that the perpetrator causes the victim" with his assertion that, here, there was no clear victim or perpetrator. *See In re Z.C.*, 2007 UT 54, ¶ 18, 165 P.3d 1206. But, as we have discussed, the juvenile court did find that there was a clear victim and perpetrator in this case, and T.S. does not challenge that finding on appeal. *See supra* ¶ 18. Moreover, we note that the Utah Legislature has enacted a mechanism to temper those penalties in certain cases.[9] *See* Utah Code Ann. § 77-2-9(2) (LexisNexis 2012).

---

8. "The term 'selfie' is the name given to a self-portrait photograph, often snapped at odd angles with smartphones, and typically made to post on a social networking website (or sent in a text message)." *United States v. Doe*, Criminal No. 1:12-cr-00128-MR-DLH, 2013 WL 4212400, at *8 n.6 (W.D.N.C. Aug. 14, 2013) (citation, brackets, and additional internal quotation marks omitted).

9. "When a person under the age of 16 is alleged to have committed any violation [of the sexual offenses chapter] the
(continued…)

¶23 Fourth, T.S. expresses concern that, in thirty-eight states, his adjudication might require him to register as a sex offender "if he traveled to or lived" in them. One of these states is Texas, where, according to the parties' stipulation, T.S. intends to continue his studies after graduating from high school. But T.S. concedes that he would not be required to so register in Utah. Because no state has yet required him to register as a sex offender, this argument is not ripe. *See Bodell Constr. Co. v. Robbins*, 2009 UT 52, ¶ 29, 215 P.3d 933 (explaining when an issue is ripe for appeal). And even if his claim does eventually ripen, the appropriate challenge should be to the particular statute requiring T.S. to register in that other state rather than to the validity of the Utah statute under which he was adjudicated.

¶24 Fifth, T.S. asserts that despite the considerable latitude enjoyed by juvenile courts, "no amount of judicial lenity can ameliorate the effects of a law that is flawed to begin with." However, this circular assertion presupposes that the Statute *is* flawed—the very thing T.S. is attempting to demonstrate and which we have rejected.

---

(…continued)
court may enter a diversion in the matter if the court enters on the record its findings that: (a) the person did not use coercion or force; (b) there is no more than two years' difference between the ages of the participants; and (c) it would be in the best interest of the person to grant diversion." Utah Code Ann. § 77-2-9(2) (LexisNexis 2012). T.S. is not eligible for diversion due to the two year and five month age gap between himself and A.R. While the changes in our society may have degraded the line between juveniles who are more than two years apart, it is the province of the Utah Legislature, and not appellate courts, to evaluate whether the policy decision to set that line should be revisited.

¶25    T.S. has not convinced us that events since the issuance of *In re Z.C.* require the expansion of that case's holding to cases where, as here, the juvenile court has determined that a distinct perpetrator and a distinct victim exist.

CONCLUSION

¶26    We cannot conclude that application of the Statute to T.S. violated his constitutional rights by failing to require the factfinder to consider T.S.'s immaturity before adjudicating him delinquent. Nor has T.S. shown that the juvenile court ignored the individual circumstances of his case. Because T.S. does not challenge the factual findings differentiating his case from *In re Z.C.*, he cannot show that his adjudication constituted an absurd result as described by that case. Additionally, T.S. has not presented a compelling rationale for expanding the holding of *In re Z.C.* to fact patterns such as that present in his case. We therefore conclude that T.S. has not demonstrated error in the juvenile court's denial of his motion to dismiss.

¶27    Affirmed.

————————