VOROS, Judge
(concurring in part‘ and concurring in the result):
4 21 I concur in the result reached by the lead opinion, I also concur in the lead opinion except as to Part II. I agree that Utah Code section 76-10-1818(1)(c) does not prosceribe Defendant's conduct, though I reach that conclugion by a slightly different route than the lead opinion takes. But ultimately I would reverse under the rule of lenity.
122 "Under our rules of statutory construction, we look first to the statute's plain language to determine its meaning." Sindt v. Retirement Board, 2007 UT 16, ¶ 8, 157 P.3d 797 (citation and internal quotation marks omitted), In addition, "[wle read the plain language of the statute as a whole, and inter *1091 pret its provisions in harmony with other statutes in the same chapter and related chapters." Li v. Enterprise Rent-A-Car Co. of Utah, 2006 UT 80, ¶ 9, 150 P.3d 471 (alteration in original) (citation and internal quotation marks omitted), "Normally, where the language of a statute is clear and unambiguous, our analysis ends; our duty is to give effect to that plain meaning." In re Z.C., 2007 UT 54, ¶ 11, 165 P.3d 1206. However, "'a court should not follow the literal language of a statute if its plain meaning works an absurd result"" Id. (quoting Savage v. Utah Youth Village, 2004 UT 102, ¶ 18, 104 P.3d 1242), An absurd result is one "so absurd that the legislative body which authored the legislation could not' have intended it." Id. € 18. Finally, "[olne of the cardinal principles of statutory constructions that [we] will look to the reagon, spirit, and sense of the legislation, as indicated by the entire context and subject matter of the statute - dealing with the subject." In re Marriage of Gonzalez, 2000 UT 28, ¶ 23, 1 P.3d 1074 (citation and internal quotation marks omitted).
123 Bearing these principles in mind, I read section 76-10-1318(1) as follows. Subsection (1)(a) addresses the situation where a person offers to engage in sexual activity with another for a fee. The forbidden acts all involve at least two people sexual intercourse, any sexual act involving a specified body part of one person and a specified body part 'of another, and-as explained in the lead opinion-masturbation with another. See Utah Code Ann. §§ 76—10—1313(1)(a), - 1801(4) (LexisNexis 2012). i
124 Subsection (1)(c), by contrast, addresses the situation where a person intends to engage in sexual activity with another for a fee-that is, to violate subsection (1)(a)-but offers to engage only in a sexual display, e., exposure or touching one's own body, lewdness, or masturbation. This subsection seems designed to capture "wink wink" situations where the parties agree to lawful sexually oriented conduct with the mutual expectation of more, This reading of the statute effectuates the reasop, spirit, and sense of the legislation.
«[ 25 While this reading makes sense of the statute, it departs from the literal statutory text. In the preceding paragraph, I stated that subsection (1)(c) addresses the situation where the person intends to engage in sexual activity with another for a fee, but in fact the subsection requires only that the person intend to engage in "sexual activity for a fee." See id. § T6-10=-1818(1)(c). It doeg not require that the sexual activity be "with another. ”
1T 26 I reject the literal reading of subsection (1)(c) because that reading yields a result so absurd our legislature could not have intended it: a person could commit sexual solicitation .by- offering to masturbate alone with the intent to masturbate alone for a fee-an act that would not even be a crime under subsection (1)(a). This makes no sense. The State argues that subsection (1)(c) is des1gned to snare prostitutes Who require their customers to self-mastmbate "in order to ferret out undercover ofﬁcers who cannot engage, in sexual actlylty " But this explanation does not address the absurdity of a literal reading of the statute: to commit sex-val solicitation under subsection (1)(a), a person must offer to engage in masturbatlon with another for a fee, but to commit sexual solicitation under subsection (1)(c), a bell-son need only offer to perform a sexual display (a noneriminal act) with the intent to masturbate alone (also a noneriminal act) for a fee.
T27 The dissent's reading of the statute suffers, in my view, from a similar weakness. To read subsections (1)(a) and (1)(b) as addressing reciprocal sides-payor and payee-of the sexual activity transaction, the dissent must read "with another person" into subsection (1)(b). Read literally, subsection (1)(b) (which omits "with another person") criminalizes the offer to pay someone to commit masturbation alone, although subsection (1)(a) (which includes "with another person") does not criminalize the acceptance of that offer-another (I believe) unintended result.
T28 In sum, then, under what I consider the most reasonable reading of the statute; to commit sexual solicitation a person must either offer to engage in sexual activity with another for a fee or offer to engage in a sexual display with the intent to engage in sexual activity with another for a fee. Here, the evidence does not show that Defendant *1092 violated either variant of the statute. Without evidence that she offered to engage in sexual activity with another for a fee, she cannot be found guilty under subsection (1)(a) And without evidence that she intended to engage in sexual activity with another for a fee, she cannot be found gullty under subsection (1)(c).
129 I concede that even what I consider the most reasonable reading of the statute departs from a literal reading of its text; but so do the other possible readings. The statute cannot sensibly be read according to its plain language-every attempt to rationalize it requires ignoring a phrase here or inserting one there. It is, in short, ambiguous.
{80 Fortunately, we have a rule for that. "The rule of lenity requires that we interpret an ambiguous statute in favor of lenity toward the person charged with 'Criminal wrongdoing." State v. Rasabout, 2015 UT 72, ¶ 22, 356 P.3d 1258 (citing State v. Watkins, 2013 UT 28, ¶ 38 n. 3, 309 P.3d 209). That three judges of this court could read the same statute so differently suggests that the rule of lenity should apply here. On that ground, I would reverse.